Faxon Company and The Faxon Lumber Company, Petitioners v. Pennsylvania Public Utility Commission et al., Respondents.

Argued June 5, 1980, before Judges WILKINSON, JR., BLATT and WILLIAMS, JR., sitting as a panel of three.

*John C. Youngman, Jr., Candor, Youngman, Gibson & Gault,* for petitioners.

*Richard S. Herskovitz,* Assistant Counsel, with him *Alfred N. Lowenstein,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent, Pennsylvania Public Utility Commission.

*Louis G. Cocheres,* Assistant Attorney General, with him *Ward T. Williams,* Chief Counsel, and *Edward G. Biester, Jr.,* Attorney General, for respondent, Pennsylvania Department of Transportation.

OPINION BY JUDGE BLATT, September 23, 1980:

The Faxon Company and the Faxon Lumber Company (Faxon) appeal here from an order of the Pennsylvania Public Utility Commission (Commission) which permitted the Pennsylvania Department of Transportation (DOT) to modify several railroad crossings in the Williamsport area.

The controversy arises out of DOT's plan to complete the construction of State Highway Route 1073, a limited access highway familiarly known as the Williamsport beltway, and, as a part of that plan, to alter

the route of a Consolidated Rail Corporation (Conrail) line which is adjacent to the Faxon property and from which Faxon maintains a private rail spur onto its property. DOT's original plan was to construct the highway between the Faxon property and the new railroad, and, rather than to sever Faxon's rail access to the Conrail line, DOT proposed to construct a spur from the Conrail line to the Faxon property which would pass under the highway.[1] The Commission found, however, that the new crossing was not necessary for the convenience and safety of the public, and it ordered that the application be amended to delete the proposed crossing. Faxon's primary argument on appeal is that the Commission's order was not based on substantial evidence, as is required by Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. *Monongahela Connecting Railroad Company v. Pennsylvania Public Utility Commission,* 45 Pa. Commonwealth Ct. 164, 404 A.2d 1376 (1979).

We note initially that Section 2702(b) of the Public Utility Code, 66 Pa. C. S. §2702(b), requires that any plan to construct, alter, relocate, suspend or abolish any public railroad crossing, must be approved by the Commission so as to "effectuate the prevention of accidents and the promotion of the safety of the public." Faxon does not contend that DOT's plan is not in the interest of the traveling public but it does contend that the abolition of its rail access to the Conrail line will have a severe adverse effect upon Faxon and, in turn, upon the economy of the entire Williamsport area.

The evidence indicates, however, that DOT's plan calls for the construction of a public railroad siding approximately one-quarter mile from the Faxon prop-

---

[1] This underpass constitutes a railroad crossing under Section 2702(a) of the Public Utility Code, 66 Pa. C. S. §2702(a).

erty which will be accessible to Faxon by way of a public road which will pass under the new highway. Moreover, a design engineer for Conrail testified that the new siding will be similar to Faxon's present private siding and will provide adequate service for Faxon and for other Conrail customers. We must therefore conclude that the Commission could properly have found that Faxon's predictions of a business downturn were not based on substantial evidence and that the proposed crossing was not necessary for the promotion of public safety.

Faxon also contends that the Commission should have approved Faxon's proposal that DOT construct a culvert beneath the highway so as to provide Faxon with a private driveway leading to a proposed siding on the other side of the railroad from the Faxon property. Faxon favored this alternative over that of the public siding, because it would have permitted Faxon to operate forklifts between the siding and its property. Although this alternative was not formally proposed by Faxon or by DOT, it was discussed at the hearing, and Faxon attempted to introduce evidence to the effect that it would be the least expensive alternative for DOT. Faxon's argument was that the cost of building such a culvert would be less than the condemnation damages which will accrue as a result of DOT's severing of Faxon's direct, private access to the railroad.[2] This argument, however, was properly held to be inadmissable by the administrative law judge. The costs of condemnation to the Commonwealth resulting from a particular railroad crossing modification, as a part of a larger condemnation plan,

---

[2] DOT's plan for the highway construction includes the condemnation of a portion of Faxon's property, in addition to the abolition of the private railroad spur. This eminent domain proceeding is pending before the Court of Common Pleas of Lycoming County.

ıs an issue for eminent domain proceedings before the courts of common pleas and was not relevant in this proceeding. Evidence of the relative condemnation damages resulting from DOT's alternate proposals is not only highly speculative, but it is also irrelevant to the prevention of accidents and the promotion of public safety, which it is the Commission's duty to effect in a crossing proceeding under Section 2702(b) of the Public Utility Code, 66 Pa. C. S. §2702(b). The order of the Commission will therefore be affirmed.

### Order

And Now, this 23rd day of September, 1980, the order of the Pennsylvania Public Utility Commission in the above-captioned case is hereby affirmed.